IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY SATRIALE,<br><br>Plaintiff,<br><br>-v-<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC. and TRANS UNION, LLC,<br><br>Defendants. | Civil Case Number:<br><br><u>CIVIL ACTION</u><br><br>COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Identity theft has long been a widespread problem in this country. Over the past decades, identity theft has emerged over the last decade as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resultant harm caused to their credit reports.[2]

2. As a result of this growing problem, Congress amended the Fair Credit Reporting Act in 2003 ("FCRA," 15 U.S.C. 1681 *et seq.*) to increase protection for victims of identity theft.[3] These regulations require "consumer reporting agencies" ("CRAs") such as Equifax, Experian and TransUnion to block information in a consumer's credit report if that

---

[1] *See, Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).
[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http://www.ftc.gov/os/2003/09/synovatereport.pdf) .
[3] *See,* Pub.L. 108–159 (December 4, 2003)

information resulted from identity theft. The CRA must do so within four days of receiving certain documentation of the identity theft. 15 U.S.C. § 1681c–2(a). That documentation includes: proof of the consumer's identity; a copy of "an identity theft report"; identification of what information should be blocked; and the consumer's statement that the disputed information does not relate to any transaction that she made. *Id.* Once a CRA receives the necessary information and places the block, it must inform the "furnisher" of the blocked information. 15 U.S.C. § 1681c–2(b).

3. Kimberly Satriale, the Plaintiff in this case, has been the unfortunate victim of identity theft. Specifically, payday loans and foreign accounts keep popping up on the Plaintiff's credit report, even though she has never opened or authorized any of these accounts. Plaintiff's Bank of America account had further been taken over by fraudsters, who charged a whole host of unauthorized charges to that account. These fraudulent accounts have tanked the Plaintiff's credit score and made it impossible for her to obtain credit.

4. Rather than working with Ms. Satriale to rectify this unfortunate situation, each of the Defendants refuse to remove these fraudulent accounts from her credit report, despite the Plaintiff specifically disputing these fraudulent items. Instead, the Defendants have continued to willfully and negligently harm the Plaintiff's credit report by continuing to associate these fraudulent accounts with the Plaintiff, thereby severely impacting Plaintiff's life and her ability to obtain credit.

5. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Equifax, Experian and Transunion have negligently and recklessly disseminated false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with these fraudulent accounts, particularly after the

Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

6. Plaintiff further alleges that Equifax, Experian and Transunion failed to follow reasonable procedures to ensure maximum accuracy of credit reports they prepared concerning Plaintiff, and failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

7. Additionally, Equifax, Experian and Transunion have failed to follow the most basic requirements of the FCRA, which require this information to be blocked within four days of being provided the necessary documents.

8. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

9. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. All defendants regularly conduct business within the state of Connecticut and violated Plaintiff's rights under the FCRA in the state of Connecticut as alleged more fully below.

10. Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this district, Defendants conduct business in this district, and communications giving rise to this action occurred in this district.

## PARTIES

11. Plaintiff, Kimberly Satriale ("Plaintiff"), is a resident of New Fairfield, Connecticut, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and

disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13. Equifax is a limited liability company with its principal place of business at 1550 Peachtree Street & One Atlantic Center, Atlanta, Georgia.

14. Defendant Trans Union, LLC ("Trans Union") is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

15. Trans Union is a limited liability company with its principal place of business at 555 W. Adams Street, Chicago, IL 60661.

16. Defendant Experian Information Solutions, Inc. is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

17. Experian Information Solutions, Inc. is a corporation incorporated in the State of Florida, with its principal place of business located in Costa Mesa, California.

## FACTUAL ALLEGATIONS

18. At some point prior to 2023, Ms. Satriale discovered a whole host of accounts on her credit reports that she had never opened or authorized, including CW Creek, the Bank of Missouri, Jefferson Capital Systems, Mariner Finance, NCB, Net Credit, Portfolio Recovery Associates, LVNV Funding, Southern Finance, NCA, Spring Oaks and Vance & Huffman.

19. The Plaintiff never authorized the opening of any of these accounts in her name.

20. Additionally, the Plaintiff has a Bank of America account, which was taken over by an identity thief who ran up a series of unauthorized charges on that account.

21. On April 11, 2023, Plaintiff completed and submitted a sworn FTC Identity Theft Affidavit, listing the fraudulent accounts on her credit report that were not hers and that she had never opened.

22. On a number of occasions, including or about June 21, 2023, the Plaintiff then tried disputing these accounts with Equifax, Experian and Transunion.

23. In those disputes, the Plaintiff clearly advised Equifax, Experian and Transunion that she was the victim of Identity Theft and that these disputed accounts should be removed and blocked, advising the Defendants that "I have never opened these accounts before. The Bank of America account 552433xxxxxxx is my account but someone took over it. Someone else is making fraudulent charges on these accounts. I believe I am a victim of identity theft."

24. With those disputes, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

25. Equifax, Experian and TransUnion each refused or otherwise failed to remove, correct or block the fraudulent accounts from Plaintiff's credit report, instead claiming to have 'verified as accurate' this fraudulent information.

26. Equifax, Experian and TransUnion were each notified of the respective disputes, but refused to investigate and/or remove the inaccurate reporting.

27. Equifax, Experian and TransUnion did not block the inaccurate information, even after the Plaintiff sent them all required documentation, including a sworn Identity Theft Affidavit.

28. At all times pertinent hereto, Defendants' conduct was willful, and carried out in reckless disregard for a consumer's rights as set forth under section 1681s, 1681c and 1681i of the FCRA.

29. As a direct and proximate result of the Defendants' violations of the FCRA, Plaintiff has been harmed in her daily life, by the impact that this derogatory information has had on her credit score and on her ability to secure credit. For example, the Plaintiff was denied credit opportunities and was unable to get the credit she needed.

30. Defendants' violations of the FCRA further caused the Plaintiff great distress, anger, annoyance and frustration in her daily life, which she should not have to deal with, and subjected the Plaintiff to abusive credit reporting practices which Plaintiff had a substantive right to be free from.

**COUNT I**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

31. All preceding paragraphs are realleged.

32. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that

term is defined by 15 U.S.C. § 1681a(c).

33. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

34. On a number of occasions, including on or about June 21, 2023, Plaintiff initiated a dispute with Equifax requesting that they correct and remove the fraudulent accounts from her credit file that was patently inaccurate and damaging to her.

35. As evidenced by the certified mail receipts in Plaintiff's possession, Equifax received these disputes.

36. Equifax, having either conducting no investigation or failing to conduct a reasonable investigation, verified as 'accurate' the fraudulent accounts on Plaintiff's credit file, something which a basic investigation would have prevented.

37. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed.

**COUNT II**
**FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY**
**15 U.S.C. § 1681e(b)**
**AGAINST EQUIFAX**

38. All preceding paragraphs are realleged.

39. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

40. Were Equifax to follow procedures to assure maximum possible accuracy of the credit

report it prepares concerning Plaintiff, it would have removed the fraudulent accounts from the Plaintiff's credit report, especially after the Plaintiff (1) disputed these accounts with Equifax, and (2) provided Equifax with documents and information definitively establishing that she was the victim of identity theft and that these accounts were not opened by her.

41. Furthermore, were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Equifax with the information reflecting that this information was inaccurate.

42. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST EQUIFAX

43. All preceding paragraphs are realleged.

44. On a number of occasions, including on or about June 21, 2023, Plaintiff initiated a dispute with Equifax requesting that they correct and remove these fraudulent account, as these account were fraudulently opened by an individual other than the Plaintiff.

45. In support of these disputes, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

46. Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

47. As such, instead of following the law and blocking the fraudulent information on the

Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

48. As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT IV
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST TRANSUNION

49. All preceding paragraphs are realleged.

50. At all times pertinent hereto, TransUnion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

51. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

52. On a number of occasions, including on or about June 21, 2023, Plaintiff initiated a dispute with TransUnion requesting that they correct and remove these fraudulent accounts from her credit file that were patently inaccurate and damaging to her.

53. As evidenced by the tracking receipt in Plaintiff's possession, TransUnion received this dispute.

54. TransUnion, having either conducting no investigation or failing to conduct a reasonable investigation, verified as 'accurate' these fraudulent accounts on Plaintiff's credit file, something which any basic investigation would have prevented.

55. As a direct and proximate result of TransUnion's willful and/or negligent refusal to conduct

a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed.

## COUNT V
## FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
## 15 U.S.C. § 1681e(b)
## AGAINST TRANSUNION

56. All preceding paragraphs are realleged.

57. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

58. Were TransUnion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent accounts from the Plaintiff's credit report, especially after the Plaintiff (1) disputed these accounts with TransUnion, and (2) provided TransUnion with documents and information definitively establishing that she was the victim of identity theft and that these accounts were not opened by her.

59. Furthermore, were TransUnion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided TransUnion with the information reflecting that this information was inaccurate.

60. As a direct and proximate result of TransUnion's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT VI
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2
### AGAINST TRANSUNION

61. All preceding paragraphs are realleged.

62. On a number of occasions, including on or about June 21, 2023, Plaintiff initiated a dispute with TransUnion requesting that they correct and remove these fraudulent accounts, as these accounts were fraudulently opened by an individual other than the Plaintiff.

63. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

64. TransUnion refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

65. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, TransUnion continued to report this fraudulent information.

66. As a direct and proximate result of TransUnion's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VII
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### AGAINST EXPERIAN

67. All preceding paragraphs are realleged.

68. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

69. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the

disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

70. On a number of occasions, including on or about June 21, 2023, Plaintiff initiated a dispute with Experian requesting that they correct and remove the fraudulent accounts from her credit file that were patently inaccurate and damaging to her.

71. As evidenced by Experian's response, Experian received this dispute.

72. Experian, having either conducting no investigation or failing to conduct a reasonable investigation, verified as 'accurate' these fraudulent accounts on Plaintiff's credit file, something which a basic investigation would have prevented.

73. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VIII

**FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY**
**15 U.S.C. § 1681e(b)**
**AGAINST EXPERIAN**

74. All preceding paragraphs are realleged.

75. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

76. Were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent accounts from the Plaintiff's credit report, especially after the Plaintiff (1) disputed these accounts with Experian, and (2) provided Experian with documents and information definitively establishing that she was the victim of identity theft and that these accounts were not

opened by her.

77. Furthermore, were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Experian with the information reflecting that this information was inaccurate.

78. As a direct and proximate result of Experian's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT IX
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST EXPERIAN

79. All preceding paragraphs are realleged.

80. On a number of occasions, including on or about June 21, 2023, Plaintiff initiated a dispute with Experian requesting that they correct and remove these fraudulent accounts, as these accounts were fraudulently opened by an individual other than the Plaintiff.

81. In support of these disputes, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

82. Experian refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

83. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Experian continued to report this fraudulent information.

84. As a direct and proximate result of Experian's willful and/or negligent refusal to block this

fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## **DEMAND FOR TRIAL BY JURY**

85. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff statutory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses;

E. Awarding pre-judgment interest and post-judgment interest;

F. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

G. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

H. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: December 22, 2023

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
(732) 298-6256 facsimile
*Attorney for Plaintiff*